IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEORIA TAZEWELL PATHOLOGY GROUP, S.C.; CONSULTANTS IN LABORATORY MEDICINE AND PATHOLOGY, LTD.; CONSULTANTS IN CLINICAL PATHOLOGY, LTD.; R. GLENN HESSEL, M.D.; RONALD CHAMPAGNE, M.D., <br><br>    Plaintiffs,<br>v.<br><br>JACK MESSMORE, ACTING DIRECTOR OF THE STATE OF ILLINOIS DEPARTMENT OF INSURANCE, in His Official Capacity; ILLINOIS DEPARTMENT OF INSURANCE; LISA MADIGAN, ATTORNEY GENERAL OF THE STATE OF ILLINOIS, in Her Official Capacity; STATE OF ILLINOIS c/o LISA MADIGAN, ATTORNEY GENERAL OF THE STATE OF ILLINOIS,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  CASE NO. 11 CV 04317 <br><br> JUDGE John W. Darrah |

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, by and through their counsel, McDonald Hopkins LLC, hereby offer their Brief in Opposition to Defendants' Motion to Dismiss.[1]

---

[1] Counsel for Plaintiffs already have informed Counsel for Defendants of Plaintiffs' intent to file a notice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, of dismissal without prejudice of Plaintiffs' state constitutional claims in this matter. Plaintiffs' Brief in Opposition therefore is directed to those claims that are not to be so dismissed.

{2822742:3}

I.  **INTRODUCTION**

The Court should deny Defendants' Motion to Dismiss. The Motion was not timely filed and is subject to being stricken on that basis. Even if Defendants' Motion were properly before this Court, which Plaintiffs do not concede, Plaintiffs set forth in the Verified Complaint facts that provide fair notice and state a plausible claim for relief arising from Defendants' implementation and enforcement of an Illinois Statute that arbitrarily, unfairly and irrationally deprives Plaintiffs of their constitutional rights. Public Act 96-1523 (the "Act"), now codified at 215 ILCS 5/356z, shifts the burden of securing payment for services rendered to insured patients by certain enumerated in-facility specialty physicians not in the patients' insurance networks from the patients' insurers to those physicians. In essence, physicians such as Plaintiffs are required by the Act to negotiate with insurers with whom they already have been unable to reach a mutual agreement to contract. The Act applies only to physicians who practice in certain arbitrarily-selected specialties, essentially conscripting them into public service, in that they are required to provide professional services without assurance of either just compensation or recourse to the courts.

Plaintiffs allege facts in the Verified Complaint that, when accepted as true (as they must be for purposes of Defendants' Motion) set forth a plausible claim for relief under Section 1983. (*See* 42 U.S.C. § 1983). Specifically, Plaintiffs have pleaded sufficient facts to demonstrate that the Defendants have acted under color of state law to deprive them of multiple constitutional rights. The Act denies Plaintiffs their constitutional rights to equal protection, due process, and freedom to contract. Defendants' Motion to Dismiss should be denied.

## II.     DEFENDANTS' MOTION SHOULD BE STRICKEN IN ITS ENTIRETY

As a threshold matter, Defendants' Motion to Dismiss should be stricken and not considered by this Court because it was not timely filed. Rule 12(a)(1) of the Federal Rules of Civil Procedure provides that an Answer shall be filed within twenty-one days of service of a Summons and Complaint. Plaintiffs filed their Complaint for Declaratory Judgment, Injunctive and Other Relief on June 24, 2011. (Docket No. 1). All Defendants received service of the Summons and Complaint on June 27, 2011. (Docket Nos. 19-22). Defendants' Answer therefore was due on July 18, 2011. (*See* Docket Nos. 19-22). Defendants failed to file an Answer or otherwise respond to Plaintiffs' Complaint on or before July 18, 2011. Defendants neither moved for an extension of their answer date, nor contacted Plaintiffs' counsel to seek an agreed extension. Instead, Defendants untimely filed their Motion to Dismiss on July 26, 2011, more than a week ***after*** the deadline for filing such motion had passed, without explanation or excuse. (Docket No. 28). The Motion to Dismiss is untimely and pursuant to Rule 12 and this Court's inherent power to manage its docket, the Motion to Dismiss should be stricken. *See* Fed. R. Civ. P. 12(a); *Arthur Pierson & Co., Inc. v. Provimi Veal Corp.*, 887 F.2d 837, 839 (7th Cir. 1989) ("a district court no doubt has substantial inherent power to control and to manage its docket").

## III.    SUMMARY OF RELEVANT FACTS IN THE VERIFIED COMPLAINT

In their Verified Complaint, Plaintiffs challenge the implementation and enforcement by the Illinois Director of Insurance of an Act that directly contravenes and violates Plaintiffs' federal constitutional rights.[2] (Verified Complaint ¶ 15). For purposes of Defendants' Motion, the Court must

---

[2] Plaintiffs are proceeding against Jack Messmore, Acting Director of the Illinois Department of Insurance. Defendants do not dispute that Plaintiffs may proceed against Defendant Messmore on their federal claim. (See Defs' Mem. p. 6). Moreover, the Eleventh Amendment has been held not to bar private plaintiffs from proceeding

{2822742:3}

3

accept as true all facts contained in Plaintiffs' Verified Complaint. *See, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The pleaded facts set forth a plausible claim for relief under Section 1983 on the basis that the Act violates Plaintiffs' constitutional rights to equal protection of the law, due process and freedom of contract.

The Act, on its face, shifts from insurers to certain arbitrarily-selected physicians the financial and administrative burden of obtaining payment for medical services received by insured patients from those enumerated in-facility specialty physicians who are not in their insurer's networks. *See* P.A. 96-1523, now codified at 215 ILCS 5/356z. As set forth in more detail below, the Act applies only to physicians who practice in certain arbitrarily-selected specialties, essentially conscripting these particular physicians, and only these particular physicians, to provide professional services without assurance of either just compensation or recourse to the courts.

The Act provides that a "non-participating facility-based provider" is prohibited from billing a patient for anything other than the deductible/co-pay that would apply if the provider were participating in the patient's health insurance network, and that the provider may seek only from the patient's insurer any compensation still owing for professional services rendered to the patient. (Verified Complaint ¶ 20). In the event that the provider is unable to negotiate a satisfactory payment with the patient's insurer, the Act dictates that the physician must submit to binding arbitration. (Verified Complaint ¶ 20). "Facility-based provider" is defined to include only certain specialty practitioners, including pathologists, and to arbitrarily and irrationally exclude physicians practicing non-enumerated specialties. (Verified Complaint ¶¶ 21, 22).

---

against state officials individually for injunctive relief from violation of federal constitutional law. *See, e.g., Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999), *citing Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908).

{2822742:3}

The implementation and enforcement of the Act violates Plaintiffs' rights to equal protection of the laws. (Verified Complaint ¶¶ 31, 35). The Act mandates unequal treatment for Plaintiffs with respect to payment for their services and the process by which they may seek payment, as compared to physicians who are identically situated, except for their areas of specialization. (Verified Complaint ¶ 32). There is no rational relationship between any governmental interest and the arbitrary classification of which physicians are and are not subject to the unequal terms of the Act. (Verified Complaint ¶¶ 33-34).

Additionally, the Act violates Plaintiffs' constitutional rights to due process. Plaintiffs have a due process right to occupational liberty and a property interest in their right to pursue their chosen profession without being conscripted into service for the public with arbitrary and impermissible limits on the means by which they may seek just compensation. (Verified Complaint ¶ 38). Because Plaintiffs are facility-based providers and their contracts with the facilities require that they provide medical services to the facilities' patients, and because the Act does not provide for the full compensation of Plaintiffs for such services, the Act, as enacted and implemented, violates Plaintiffs' basic occupational freedoms and right to earn a living. (Verified Complaint ¶ 41). The Act therefore violates Plaintiffs' rights to Due Process with respect to occupational liberty under the Fourteenth Amendment of the United States Constitution. (Verified Complaint ¶ 42).

The Act further violates Plaintiffs' due process rights because it is unconstitutionally vague. (Verified Complaint ¶¶ 52-57). For instance, the Act forces Plaintiffs to submit to binding arbitration if they are unable to reach agreement with third-party payors, such as insurers, without setting forth standards, processes or procedures for the arbitrator to apply. (Verified Complaint ¶ 55). Further, neither the Act nor any other statute that might reasonably

be understood to apply provides Plaintiffs any guidance on how the negotiation and arbitration provisions will be applied. (Verified Complaint ¶ 56). The Act therefore is void for vagueness.

The Act violates Plaintiffs' constitutional right to freedom of contract. The United States Constitution expressly provides that no state shall enact any law impairing the obligation of contract. (U.S. Const. Art. I. §10). The Act impairs Plaintiffs' existing contracts with the facilities they serve. (Verified Complaint ¶ 75). Pursuant to their contracts with the facilities where they practice, Plaintiffs are required to provide services at all times to all patients of those facilities. (Verified Complaint ¶ 39). Plaintiffs accepted this obligation in their contracts negotiated at arms' length because they could charge the full value of their services, collecting from patients any difference between the amounts reimbursed by insurers and Plaintiffs' actual fees. (Verified Complaint ¶ 39). Plaintiffs' duty to provide services to these patients remains, but the Act now prohibits Plaintiffs from seeking payment directly from patients for services rendered to them. (Verified Complaint ¶ 40). This purpose and effect of the Act nullifies Plaintiffs' existing contracts with the facilities in which they practice. The Act also impairs Plaintiffs' right to contract with whom they wish because, on its face, the Act requires Plaintiffs to negotiate with insurers with whom they already have chosen not to contract. (Verified Complaint ¶ 77).

Plaintiffs have pleaded facts demonstrating that the Act unlawfully infringes their constitutional rights in several respects. Defendants' Motion to Dismiss Plaintiffs' Section 1983 claims therefore should be denied.

## IV.   LAW AND ARGUMENT

Oddly, Defendants fail to identify the law upon which they base their Motion to Dismiss. They likewise have identified no standard of review to guide this Court's decision on that

Motion. Having provided this Court with no legal basis on which to grant their motion, Defendants cannot achieve the result they desire. Even if Plaintiffs and this Court assume that Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, Defendants cannot prevail. Plaintiffs have pleaded facts that both provide Defendants fair notice of the claims against them and set forth a plausible claim for relief.

### A. Plaintiffs Have Met the Applicable "Fair Notice" Pleading Requirements

To state a claim sufficient to survive a challenge under Rule 12(b)(6), the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Seventh Circuit has described the Supreme Court's interpretation of that language as imposing "two easy-to-clear hurdles." *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice" of what the claim is and the grounds upon which it rests. *Id.*, *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) *(quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *alteration in Bell Atlantic*. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *Concentra*, 496 F.3d at 776, *quoting Twombly,* 127 S.Ct. at 1965, 1973 n. 14. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. In examining the facts and matching them up with the stated legal claims, the Court is to allow "the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint."

*Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994) (citations omitted).

A complaint need not contain detailed factual allegations; rather, a plaintiff must provide the factual "grounds" of his entitlement to relief. *Twombly*, 550 U.S. at 547. *Tamayo*, 526 F.3d at 1081. To survive a motion to dismiss, "a complaint need not 'allege all . . . of the facts logically entailed by the claim,' and it certainly need not include evidence." *Id., quoting Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998); *see also Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 714 (7th Cir. 2006) ("Federal complaints plead <u>claims</u> rather than facts."). Indeed, "[l]itigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's <u>proof</u> leads to windy complaints and defeats the function of Rule 8." *Bennett,* 153 F.3d at 519.

As laid out above, Plaintiffs' Verified Complaint pleads sufficient facts to give Defendants fair notice of Plaintiffs' Section 1983 claim and to demonstrate the plausibility of that claim. Defendants' Motion to Dismiss should be denied.

### B. Plaintiffs Have Pleaded Facts That Satisfy The Elements of Their Section 1983 Claim

To prevail on their Section 1983 claim, Plaintiffs must prove that Defendants: (1) acted under color of state law; to (2) deprive them of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990).[3] Defendants have not alleged that Plaintiffs have failed to state any element of their claim, instead attempting to argue those claims by introducing "facts" from

---

[3] Defendants focus any argument regarding Plaintiff's claim for injunctive relief on the element of likelihood of success on the merits. As shown, Plaintiffs have alleged sufficient facts to state a claim under Section 1983. Plaintiffs have thus sufficiently pleaded the elements for injunctive relief: (1) likelihood of success on the merits; (2) lack of adequate remedy at law; and (3) threat of irreparable harm.

outside the pleadings. Any such allegations must be disregarded for purposes of this motion to dismiss. *See, e.g., Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). The requisite state action having been inescapably established by the enactment and enforcement of the Act, Defendants contend only that the Act effects no constitutional deprivation.[4] That contention ultimately fails, and certainly does not warrant dismissal of the pleadings at this stage.

> 1. **Plaintiffs State a Claim Under the Equal Protection Clause by Pleading That The Act's Arbitrary Distinction Among Specialty Physicians Bears No Rational Relationship to A Legitimate Government Interest.**

Plaintiffs have alleged, in support of their equal protection challenge, that the Act irrationally singles out physicians in certain arbitrarily-selected specialty areas for disadvantageous treatment. Defendants do not even allege that Plaintiffs have failed to plead facts in support of the claim. Rather, Defendants challenge the ultimate legal viability of Plaintiffs' claims – a challenge they cannot maintain at this stage of the litigation.

Defendants acknowledge that even economic regulation cannot withstand an equal protection challenge if it is "wholly arbitrary." (Defs' Mem. at 8, *citing City of New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976)). In short, the Equal Protection Clause is offended if the Act's classification "rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961); *Kotch v. Bd. of River Port Pilot Comm'rs*, 330 U.S. 552, 556 (1947).

Classification of practitioners in a particular field and determinations regarding their compensation on the basis of factors not specifically related thereto has been held to constitute an equal protection violation. Thus, in *Family Division of Trial Lawyers of Superior Court - D.C., Inc. v. Moultrie*, 725 F. 2d 695, 710 (D.C. Cir. 1984), the court overturned the summary

---

[4] The Defendants are "state actors" for purposes of § 1983 and the Fourteenth Amendment. (Verified Complaint ¶ 27).

{2822742:3}

9

judgment ruling that had denied the equal protection claim of family law practitioners who asserted that members of their specialty practice who had signed up for appointment as compensated public defenders in juvenile cases were, without rational basis, singled out from others to bear a disproportionate burden of *pro bono* appointments to represent indigent parents in family court. Similarly, in *Merrifield v. Lockyer*, 547 F. 3d 978, 991 (9th Cir. 2008), the court struck down on equal protection grounds a statute distinguishing for licensing purposes among pest control professionals based upon the type of vertebrate animals they removed, with no rational basis for doing so other than economic reasons. *Id.* Like the defendants in *Moultrie* and *Merrifield*, Defendants here have not bothered to allege that the Act's arbitrary selection of medical specialty practices for additional regulation rationally relates to any of the Act's claimed purposes. Defendants apparently hope that their bald statement that the Act is "rational" will suffice. (Defs' Mem. at 9). It cannot.

Defendants argue that the Act, when afforded great deference, may relate to a purpose of eliminating surprise bills to the patient "who has done everything right." (Defs' Mem. at 4). For purposes of this Motion, the Court must accept as true Plaintiffs' allegations regarding the arbitrary nature of the classification and need not consider Defendants' factual allegations that contradict Plaintiffs' Verified Complaint. *Car Carriers, Inc.*, 745 F.2d at 1107. By its express terms, the Act applies to only those facility-based physicians who practice certain enumerated medical specialties. (*See* 215 ILCS 5/356z.3a(a)). Specifically, the Act applies to physicians practicing radiology, anesthesiology, pathology, neonatology and emergency medicine. (Verified Complaint ¶¶ 20-21). Within a given facility, the Act thus distinguishes physicians practicing the enumerated specialties from those practicing specialties not so enumerated. (*Id.* ¶ 22). For example, an out-of-network consulting neurosurgeon providing services in the same

facility at the same time and under the same circumstances as an out-of-network pathologist would not be affected at all, let alone unfairly burdened by the Act. (*See id.* ¶¶ 22, 23, 32). The difference in treatment of these physicians is wholly unrelated to whether the patient has or has not "done everything right." Instead, the vastly different rights and responsibilities with respect to payment for services rendered pursuant to their hospital contracts of these identically-situated physicians are a direct, and sole, result of the enactment, implementation and enforcement of the Act. (*See id.*).

Plaintiffs have provided a sufficient factual basis to place Defendants on notice of Plaintiffs' equal protection claim against them. Plaintiffs have met the standard for pleading their case and the Motion to Dismiss should be denied.

> **2.** ***Plaintiffs Have Pleaded Facts From Which The Court Could Conclude That It Is Plausible That The Act Violates Plaintiffs' Fourteenth Amendment Rights To Due Process.***

Defendants admit that Plaintiffs are constitutionally guaranteed the freedom to engage in their chosen profession. (Defs' Mem. at 11). Defendants' assertion that Plaintiffs' Verified Complaint includes no "occupational liberty" claim, however, is simply wrong. Paragraph 41 of the Verified Complaint, for example, expressly states that, "the Statute, as enacted and implemented, violates Plaintiffs' basic rights to earn a living and to pursue the livelihood of their choosing." The Verified Complaint further states that "the Act violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." (*Id.* ¶ 42).

Moreover, Defendants' claims to the contrary notwithstanding, a due process claim is available under circumstances other than a complete ban on one's ability to practice a profession. *See, e.g., Moultrie*, 725 F. 2d at 707 (an unconstitutional deprivation of rights can result from an unreasonable system that effectively denies a plaintiff the right to remunerative practice in the

area or specialty of his choice); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (due process applies to bar licensing, as licensing is state's grant of permission to engage in the occupation of practicing law). Plaintiffs have specifically alleged that the Act significantly impairs the abilities of arbitrarily-selected specialty physicians such as Plaintiffs to secure just compensation for services they are contractually and statutorily obligated to provide. (Verified Complaint ¶¶ 31, 38, 41) These facts are sufficient to state a plausible claim for relief on the basis of due process.

> **3.     Plaintiffs Have Sufficiently Alleged That The Act Violates Plaintiffs' Constitutional Freedom To Contract By Effectively Conscripting Them To Provide Professional Services With No Guarantee of Just Compensation.**

Plaintiffs' Verified Complaint set forth facts from which the Court could reasonably conclude that the Act unfairly abridges Plaintiffs' constitutional rights to contract – and to not contract – as they see fit. (*Id.* ¶¶ 43-49). Defendants do not address the sufficiency of Plaintiffs' pleading, instead attacking only the ultimate viability of the claim. Even this misplaced attack must fail, in that Defendants themselves cite cases confirming the basic principle that "private contracts are not subject to unlimited modification under the police power." *United States Trust Company of New York v. New Jersey*, 431 U.S. 1, 22 (1977) (cited in Defs' Mem. at 13); *see also Association of Surrogates and Supreme Court Reporters within The City of New York v. New York*, 940 F. 2d 766, 773 (2d Cir. 1991) (cited in Defs' Mem. at 14).

Defendants appear to concede rather than dispute that the Act impairs Plaintiffs' contracts. (*See* Defs' Mem. at 15-18). They certainly do not argue that no impairment was pleaded – nor could they. Further, Defendants offer no legal basis for dismissing Plaintiffs' claim based on this conceded impairment. Defendants simply argue that the state's action was "reasonable." (Defs' Mem. at 18). Even if such argument were appropriate at this stage (which

Plaintiffs do not concede), it is not well-founded. The standard is not whether the Act is reasonable, but whether the degree of impairment – which in this case is substantial – is justified by the legitimate purpose at issue. *See Association of Surrogates*, 940 F. 2d at 772, *quoting United States Trust Co.*, 431 U.S. at 25 (where the impairment is "substantial" and not "minimal," it can survive scrutiny only if it is "reasonable and necessary to serve an important public purpose"). Defendants ignore this standard at their peril, given that Plaintiffs have sufficiently alleged that the severity of the impairment, coupled with the utter lack of any relationship to a legitimate purpose to protect the state welfare, renders the Act an unconstitutional violation of the Contracts Clause, U.S. Const. Art. I, § 10.

Plaintiffs have pleaded a plausible claim of impairment of the constitutional right to contract and Defendants' Motion therefore must be denied.

> **4. Plaintiffs Have Sufficiently Pleaded That The Act Is Void for Vagueness Because The Provisions Of The Act Provide Neither Notice of Its Requirements Nor a Standard For Its Application.**

Finally, Plaintiffs have pleaded facts sufficiently demonstrating that the Act is unconstitutionally vague, which further violates Plaintiffs' due process rights. An unconstitutionally vague statute is one that presents two distinct problems: (1) it does not give an individual of ordinary intelligence a reasonable opportunity to comply because, in effect, there is no notice of what the law requires; and (2) it lacks explicit standards for its application, and thus "impermissibly delegates basic policy matters . . . for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Mustov v. Rice*, 663 F. Supp. 1255 (N.D. Ill. 1987), *citing Brockert v. Skornicka*, 711 F2d 1376, 1381 (7th Cir. 1983).

Plaintiffs have pleaded that the Act fails to provide notice of its requirements, in that it does not set forth any procedures or standards to guide its mandated negotiation and arbitration

processes. (Verified Complaint ¶¶ 55-56). The Act, in effect, improperly delegates authority to determine the law governing physicians' existing contracts with hospitals and future contracts with patients, as well as the law governing pricing, by providing insurers unilateral and unfettered control to determine payment amounts with no meaningful review. Further, Plaintiffs have pleaded that the Act requires Plaintiffs to engage in arbitration, but provides no standards or procedures for the arbitration so mandated. (Verified Complaint ¶¶ 52-57).

In response to Plaintiffs' well-pleaded allegations regarding the Act's vagueness, Defendants point to the existence of American Arbitration Association ("AAA") rules and procedures. (Defs.' Memo. At 20). Defendants ask the Court not only to consider matters beyond the pleadings, but also to ignore the crucial fact that the Act does *not* adopt or incorporate by reference any rules, procedures or any other provisions of the AAA. Instead the Act merely states that arbitrators are to have been trained by the AAA or by the American Health Lawyers Association ("AHLA"). (215 ILCS 5/356z.3a(e)). The Act does not require arbitrators to adhere to AAA – or any other – standards when adjudicating disputes arising out of the Act.

Neither reference to unincorporated standards nor Defendants' hope that arbitrators will be "reasonable" may be considered on a Motion that tests only the sufficiency of Plaintiffs' pleading. (Defs' Mem. at 20). The extraordinary fact that Defendants have responded to Plaintiffs' carefully-pleaded complaint with the non-answer that the "American Arbitration Association has rules and procedures about the conduct of arbitration," when such rules are neither incorporated into nor even referenced by the Act, graphically illustrates the Act's complete failure to provide a workable process. (*See* Defs' Mem. at 20).[5] Defendants' allegation

---

[5] By attempting to insert into the Act a standard that it clearly does not incorporate, Defendants impliedly concede that the Act as written canot ultimately survive Plaintiffs' challenge that it is unconstitutionally vague. The Court need not, however, decide that ultimate issue at the pleadings stage.

{2822742:3}

regarding AAA standards is beyond the pleadings, beyond the Act, and not appropriately considered on their Motion to Dismiss.

Plaintiffs further have pleaded that the arbitration provision has mechanical flaws and lack of standards, which make it unlikely that matters falling under the terms of the Act will be decided with any degree of evenhandedness. (Verified Complaint ¶¶ 55-56). Because of these defects, Plaintiffs allegations regarding "arbitrary and discriminatory" enforcement of the Act's provisions are plausible. *See Karlin v. Foust*, 188 F.3d 446, 459 (7th Cir. 1999) (citing *Grayned,* 408 U.S. 104, 108-09) (1972). Plaintiffs have pleaded sufficient facts giving rise to their claim that the Act is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and therefore void, to survive Defendants' Motion to Dismiss.

V. **CONCLUSION**

Defendants failed to answer the Complaint, filing instead an untimely and unfounded Motion to Dismiss. As noted herein, Plaintiffs' Verified Complaint provides fair notice of their claims, and a plausible statement of their entitlement to relief. Plaintiffs therefore respectfully request that Defendants' Motion to Dismiss be stricken from the Court's consideration or, in the alternative, be denied on its merits.

    Peoria Tazewell Pathology Group, S.C., Consultants in Laboratory Medicine and Pathology, Ltd., Consultants in Clinical Pathology, Ltd., R. Glenn Hessel, M.D. and Ronald Champagne, M.D.

    By:   _s/Anne Owings Ford_____
            One of its Attorneys

## CERTIFICATE OF SERVICE

I, Anne Owings Ford, an attorney, hereby certify that on August 22, 2011, I electronically filed Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the Electronic Case Filing System and in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

/s/ Anne Owings Ford

**ATTORNEYS FOR PLAINTIFFS**
**McDONALD HOPKINS LLC**
RICHARD N. KESSLER (6183140)
JOSEPH J. JACOBI (6273967)
300 N. LaSalle Street, Suite 2100
Chicago, Illinois 60654
Tel: (312) 280-0111
Fax: (312) 280-8236
Email: rkessler@mcdonaldhopkins.com
jjacobi@mcdonaldhopkins.com

**McDONALD HOPKINS LLC**
ANNE OWINGS FORD (OH 0043717) (pro hac vice)
600 Superior Ave., East, Suite 2100
Cleveland, OH 44114
Tel: (216) 348-5400
Fax: (216) 348-5474 (facsimile)
Email: aoford@mcdonaldhopkins.com

Dated: August 22, 2011