IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Peoria Tazewell Pathology Group, S.C., et. al, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 4317 |
| Jack Messmore, Acting Director, Illinois Department of Insurance, et al., | ) ) ) ) ) | Judge Darrah |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

The law at issue in this case, effective June 1, 2011, addresses how certain "out of network" or "non-participating facility-based physicians" can bill for services. 215 ILCS 5/356z.3a. Under the law, doctors in certain specialties with hospital-based practices (radiology, anesthesiology, pathology, neonatology, and emergency department services), who are not in the patient's preferred provider insurance network, and are therefore billing independently for their services, may not bill the patient directly. If the patient agrees, any benefits the patient receives for the out of network service is assigned to the physician. The patient may be responsible for a deductible or co-pay, but any additional charge by the out-of-network physician beyond the assigned benefit amount must be submitted to the insurance company. This statutory "hold harmless" provision, which prevents "balance billing" the patient, is designed to protect patients who access their preferred provider network for medical services and then are surprised to receive a bill from a physician they did not choose and may never have met. As we explained in

our opening brief, the "hold harmless" provision is not new. It has been a part of the Illinois Department of Insurance's regulations since 2009, and is seen in other states. See defendant's opening brief at 5, 15. The statute also provides–and this provision is new–that if the out of network physician and insurance company cannot agree on the reasonableness of the bill, they must engage in mandatory arbitration. (In the event the patient chooses the out-of-network doctor deliberately, then the doctor can bill the patient directly and the statute does not apply.) [1]

      Defendants have moved to dismiss plaintiffs' legal claims that the statute is facially invalid under the Equal Protection, Due Process, and Contract Clauses, and that it is facially vague. In their response to the motion, plaintiffs do not controvert, and barely discuss at all, the controlling constitutional standards that defendants cited in their opening brief: that the governing standard is the rational basis test; that this standard, especially in the area of economic legislation, is extraordinarily deferential to legislative classifications; that any conceivable rationale can be asserted to uphold the legislative classification; that the Contract Clause, as interpreted in the modern era, is not applied literally; that reasonably foreseeable regulations of contractual relationships are not contract impairments at all, because parties can be expected to plan ahead for them; that even if a substantial contractual impairment is found to occur, the legislative action will be upheld if reasonable; and that facial vagueness challenges in non-First Amendment cases are difficult to mount because plaintiffs have the heavy burden of showing the statute is vague in all its applications. All of plaintiffs' claims are facial in nature, and, as we

---

[1] Plaintiffs' statement that they are "essentially conscripted into public service," Plaintiffs brief at 2, is rhetorical hyperbole, especially so in a facial challenge. The doctors will bill for their services and receive payment from the insurance company, and, if the amount is disputed, pursue arbitration. Nothing in the statute remotely suggests the physicians will be compelled to engage in uncompensated work. Nothing deprives them of any occupational liberty interest.

noted in our opening brief, facial challenges are disfavored because they rely on speculation. No particular concrete applications of the statute are being litigated in this case, so plaintiffs are left to argue the statute can *never* be applied consistent with the Constitution, and that *every* arbitration over a disputed bill, should it ever come to that, will inevitably mean a violation of the Due Process, Equal Protection, and Contract Clauses. As we have argued previously, the law is clearly a reasonable measure designed to protect consumers and control health care costs, well within the legislature's constitutional authority.

This reply memorandum is not going to repeat the same arguments made in the opening brief. It will confine itself to responding to those points on which the plaintiffs put the most emphasis in their opposition brief. We believe the vagueness, Contract Clause, and other arguments raised in our opening brief do not need further elaboration.

Plaintiffs have voluntarily dismissed their state law constitutional claims in Counts II, III, IV, V, and VI of their complaint, see Doc. 37, so there is no need to address those issues.

Plaintiffs have argued the motion to dismiss was not timely filed. The motion to dismiss was filed on July 26, 2011, contemporaneously with defendants' brief in support of the motion to dismiss and in opposition to the motion for preliminary injunction. The date of July 26, 2011, was set by the emergency judge for the defendants' response brief on the motion for preliminary injunction. Filing the motion to dismiss at the same time caused plaintiffs no prejudice. Filing one brief for both purposes avoided duplication. The motion was noticed for presentment on August 23, 2011, at which time the Court set a briefing schedule for this reply memorandum and a status hearing in October. The court also indicated it will consider the motion to dismiss first. Plaintiffs' argument about the timing of the motion is without merit.

**ARGUMENT**

I. **THE MERITS OF PLAINTIFFS' CONSTITUTIONAL CLAIMS CAN BE DECIDED ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.**

Plaintiffs' principal argument is that they should get the benefit of the doubt on a motion to dismiss. Taking all their allegations as true, under the pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), plaintiffs argue that they have stated enough of a claim to survive a 12(b)(6) motion. Much of their memorandum merely cites back to the complaint, as if this were enough to survive the motion. The Seventh Circuit, however, has spoken to this situation directly–in a case where the rational basis test applies, and any conceivable rational basis can be used to uphold the challenged statute and its classification, plaintiffs cannot just point to their pleading and its conclusory allegations of lack of rationality or underinclusiveness and expect to survive. Many cases like this one have been decided adversely to plaintiffs on motions to dismiss under Rule 12(b)(6).

In *Wroblewski v. City of Washburn,* 965 F.2d 452 (7th Cir. 1992), plaintiff asserted an equal protection claim, and a motion to dismiss was filed. The Court addressed "the perplexing situation...when the rational basis standard meets the standard applied to a dismissal under Fed.R.Civ.P. 12(b)(6)." *Id.* at 459. While plaintiff gets the benefit of having everything in the complaint taken as true and the reasonable inferences that follow, "we apply the resulting 'facts' in light of the deferential rational basis standard. *To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.* We have upheld dismissals under Rule 12 (b)(6) of challenges to such classifications...and we do so here." *Id.* at 460. (Emphasis added, internal

citation omitted). Numerous cases, several in health care-related fields, are consistent with this holding. See, *e.g., Maguire v. Thompson,* 957 F.2d 374 (7th Cir. 1992)(motion to dismiss, regulation of naprapaths); *Mitchell v. Clayton,* 995 F.2d 772 (7th Cir. 1993)(acupuncturists); *Illinois Health Care Association v. Illinois Department of Public Health,* 879 F.2d 286 (7th Cir. 1989) (equal protection challenge involving hospitals and nursing homes); *DeSalle v. Wright,* 969 F.2d 273 (7th Cir. 1992) (equal protection challenge relating to medical licensure); *Bernard v. United Township High School District Number 30,* 5 F.3d 1090 (7th Cir. 1993) (occupational liberty claim decided on motion to dismiss); *Akbar v. Daly,* 2009 WL 3055322 (N.D. Ill.2009)(Dow, J.) (citing *Wroblewski,* granting motion to dismiss equal protection claim); *Medical Transportation Providers Association v. City of Chicago,* 2003 WL 193187 at *1 (Bucklo, J.) ("The Northern District of Illinois has repeatedly granted 12(b)(6) motions to dismiss an equal protection claim when the government action is rationally related to a legitimate objective."); *Bricklayers Union Local 21 v. Edgar*, 922 F.Supp. 100, 107 (N.D. Ill. 1996)(granting motion to dismiss Contracts Clause claim).

It should be remembered that this body of cases predates the Supreme Court decisions in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). "[These cases] require that a complaint be dismissed if the allegations do not state a plausible claim....[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid...." *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011). The claim must have enough substance that suggest a right to relief that is "beyond the speculative level." *Id,* quoting *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009). Before *Bell Atlantic* and *Iqbal,* the standard was the now-repudiated "no set of facts" formula of *Conley v. Gibson,* 355 U.S. 41,

45-46 (1957), that a Rule 12(b)(6) motion should not be granted unless it appears beyond doubt plaintiff can prove no set of facts in support of his claim. This formula has now been superceded by the more restrictive test of *Bell Atlantic and Iqbal.* If plaintiffs' argument would not have carried the day in the *Conley* era, it has even less power now. To get past a motion to dismiss here requires a "plausible" claim of facial invalidity. Plaintiffs have not met that standard.

      II.      **THE STATUTE IS NOT UNCONSTITUTIONAL MERELY BECAUSE IT IS ALLEGED TO BE UNDERINCLUSIVE**.

Another theme running through the plaintiffs' response is that the statute focuses on certain hospital-based specialists and not others and is therefore arbitrary or irrational. One example cited is that out-of-network neurosurgeons are not covered.

A long line of cases stands in contradiction to plaintiffs' argument that the underinclusiveness of a statute renders it unconstitutional. As the Court held in *Williamson v. Lee Optical Co.,* 348 U.S. 483 (1955) "reform may take place one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind....The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Id.* at 489. See also *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976); *Lamers Dairy Inc. v. United States Department of Agriculture,* 379 F.3d 466, 475 (7th Cir. 2004); *Greater Chicago Combine and Center v. City of Chicago,* 431 F.3d 1065, 1072 (7th Cir. 2005). The test is not whether better or more complete laws could be envisioned or rationalized, but whether the existing law has no rational basis whatever. *Id.* The state is not required to "choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams,* 397 U.S. 471, 487 (1970).

The legislature can legitimately conclude that the primary focus of the regulation should

be on those "facility based" providers identified in the statute: radiologists, anesthesiologists, pathologists, neonatologists, and emergency department physicians. This is a rational judgment, even if other specialities, such as neurosurgery, could be envisioned for inclusion. Such underinclusiveness, if it exists at all, does not render the statute unconstitutional.

Plaintiffs cite two cases in support of their position which we will briefly address. Both are factually very different from this case. *Family of Division of Trial Lawyers of the Superior Court v. Moultrie,* 725 F.2d 695 (D. C. Cir. 1984), was not a facial challenge to a statute. The challenge was to a practice of placing the whole burden of representing indigent parents in family court solely on one smaller segment of lawyers who depended on Criminal Justice Act-compensated cases. In some cases no compensation was provided at all. The Court did not say the process was *facially* a violation of equal protection. It remanded for an evidentiary hearing on the *application* of the assigned-counsel system. *Id.* at 710. In our case, additionally, the statute is not requiring "conscription" into pro bono activities. Mandatory arbitration between doctors and insurance companies over the value of medical services (if and only if disputed) is hardly comparable to the situation in *Moultrie*.

The other case on which plaintiffs rely is *Merrifield v. Lockyer,* 547 F.3d 978 (9th Cir. 2008). It is that rare case where a statute was found to fail rational basis review, but the case is in no way comparable to this one. A California law required that persons engaged in structural, non-pesticide pest control had to obtain licenses similar to those using pesticides. However, the law exempted from licensure those engaged in the non-pesticide control of vertebrate pests, but defined "vertebrate pests" as not to include mice, rats*,* or pigeons*.* Plaintiff found himself within the exception-to-the-exception, dealing with vertebrate pests but still subject to licensure

requirements. The Court upheld the requirement that he be licensed, but struck down as irrational the exclusion from the exemption based on the State's "completely contradictory rationale," *id.* at 991, because those exempted from the licensure law were more likely to interact with chemical pesticides than those covered by the law. The Court also found that at bottom the law was rooted in economic protectionism. *Id.* The very unusual facts of *Merrifield* provide no support for plaintiffs as it bears on our case. There is nothing irrational about the legislature's desire to prevent balance billing and its chosen mechanism of dispute resolution for doctors and insurance companies. The law is rooted in the state's legitimate interest in controlling health care costs.

**CONCLUSION**

For the foregoing reasons, defendants request that their motion to dismiss be granted.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

s/Thomas A. Ioppolo
Thomas A. Ioppolo
Michael Dierkes
Shirley R. Calloway
Assistant Attorneys General
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-7198/3672/5581