UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEORIA TAZEWELL PATHOLOGY GROUP, S.C.; CONSULTANTS IN CLINICAL PATHOLOGY, LTD.; CONSULTANTS IN LABORATORY MEDICINE AND PATHOLOGY, LTD.; R. GLENN HESSEL, M.D.; and RONALD CHAMPAGNE, M.D., <br><br>Plaintiffs, <br><br>v. <br><br>JACK MESSMORE, ILLINOIS DEPARTMENT OF INSURANCE, LISA MADIGAN, and THE STATE OF ILLINOIS, <br><br>Defendants. | Case No. 11-cv-4317 <br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This action arises out of Illinois's recent enactment of Public Act 096-1523 (the "Act"), which amended the Illinois Insurance Code to address a procedure known as "balance billing" of insured patients for services provided by medical-service providers outside the patients' insurance networks at in-network facilities.

Plaintiffs are providers of professional pathology services in Illinois. They brought suit against the State of Illinois, the Illinois Department of Insurance, Jack Messmore (Acting Director of Insurance), and Attorney General Lisa Madigan (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, requesting a declaration that Public Act 096-1523 is unconstitutional and a

preliminary and permanent injunction to restrain Defendants from implementing and enforcing the Act.

## BACKGROUND

The following facts are taken from Plaintiffs' Verified Complaint and are accepted as true for purposes of resolving Defendants' Motion to Dismiss.

Peoria Tazewell Pathology Group, S.C. ("PTPG"); Consultants in Clinical Pathology, Ltd. ("CCP"); and Consultants in Laboratory Medicine and Pathology, Ltd. ("CLMP") provide professional pathology services, pursuant to arms'-length contracts, at various hospitals in Illinois. (Compl. ¶¶ 2-3.) Dr. Ronald Champagne is the president of PTPG. (Compl. ¶ 4.) Dr. R. Glenn Hessel is the president of CLMP and CCP. (Compl. ¶ 5.)

On February 11, 2011, Governor Quinn signed Public Act 96-1523 into law with an effective date of June 1, 2011. (Compl. ¶ 19 and Ex. B.) The Act provides that a "non-participating facility-based provider" shall be prohibited from billing an insured patient[1] for anything other than the applicable deductible and co-pay that would apply if the provider were a participating provider and that any remaining payment to the provider must be sought from the patient's insurer or health plan, not the patient. (Compl. ¶ 20.) If the "non-participating facility-based provider" and the insurer or health plan disagree over the amount to be paid, either party can submit the dispute to binding arbitration on a per-bill basis. (Compl. ¶ 20.) The Act defines "facility-based provider" as "a physician

---

[1] The Act refers to "insureds, beneficiaries, or enrollees in a participating hospital or participating ambulatory surgical treatment center." *See* 215 ILCS 5/356z.3a(a). For convenience, they are referred to here as "insureds" or "insured patients."

2

or other provider who provides radiology, anesthesiology, pathology, neonatology, or emergency department services to insureds, beneficiaries, or enrollees in a participating facility or participating ambulatory surgical treatment center." (Compl. ¶ 21 (quoting 215 ILCS 5/356z.3a(a)).)

Nonparticipating physicians who are not listed in that statutory definition – e.g., internal-medicine physicians, general practitioners, cardiologists, pediatricians, general surgeons, and surgical specialists – are not subject to the prohibitions in the Act. (Compl. ¶ 22.) Plaintiffs therefore allege that the Act "capriciously acts to abridge the constitutional rights of certain arbitrarily targeted Illinois physicians" and that it places a substantial burden on Plaintiffs' medical practices. (Compl. ¶¶ 20, 24.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, a complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

3

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

The Seventh Circuit has summarized the requirements of a well-pleaded complaint as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Id.* at 581.

## ANALYSIS

As an initial matter, Plaintiffs assert that Defendants' Motion to Dismiss is untimely and therefore ask the Court to strike it. Plaintiffs filed their Complaint on June 24, 2011. The docket shows that Defendants were served June 27, 2011. (*See* Docket Nos. 19-22.) Federal Rule of Civil Procedure 12 provides that a defendant must

4

serve an answer within twenty-one days after being served with a summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). Thus, Defendants' answer was due July 18, 2011; but they did not file anything until July 26, 2011, when they filed the Motion to Dismiss that is presently before the Court.

The Federal Rules of Civil Procedure must be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1; and "a district court has the discretion to permit the defendants to file their answer late 'when the failure to act was the result of excusable neglect,'" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008) (quoting Fed. R. Civ. P. 6(b)). Here, Defendants combined their Motion to Dismiss with their brief in opposition to Plaintiffs' Motion for Preliminary Injunction and filed their combined brief pursuant to the schedule on Plaintiffs' Motion for Preliminary Injunction, which was entered by Judge Chang, acting as emergency judge. Although Defendants technically missed their deadline to respond to the Complaint, as provided in Federal Rule of Civil Procedure 12, they did file a response to Plaintiffs' Complaint according to the schedule set by Judge Chang. At any rate, to disregard Defendants' Motion to Dismiss in its entirety as a penalty for not filing it before the date the answer was due (six days earlier) would not serve the interests of justice. Defendants' Motion to Dismiss will therefore be considered on the merits.

Plaintiffs set forth six claims in their verified Complaint. Count I is brought under 42 U.S.C. § 1983 and contains four subparts: (A) a claim that the Act violates Plaintiffs' constitutional right to equal protection of the law; (B) a claim that the Act violates Plaintiffs' constitutional right to due process; (C) a claim that the Act impairs

5

existing contractual rights and obligations, in violation or Article I of the Constitution; and (D) a claim that the Act is void for vagueness, in violation of Plaintiffs' right to due process. Counts II through VI claim various violations of the Illinois Constitution.

In their Motion to Dismiss, Defendants argue that much of the Complaint is barred by the Eleventh Amendment. Specifically, Defendants assert that the Eleventh Amendment bars suits against the State of Illinois and the Department of Insurance and that it also bars a federal court from forcing state officials to conform their conduct to state law, citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984); and *Smith v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 23 F.3d 1134, 1139-40 (7th Cir. 1994). Defendants also assert that under *Ex parte Young*, 209 U.S. 123 (1908), state officials can be sued in their official capacity for enforcement of allegedly unconstitutional laws only if they have some connection to enforcing that law. Thus, argue Defendants, only Defendant Messmore, the Acting Director of Insurance, is a proper Defendant in this case.

In response to these arguments, Plaintiffs have voluntarily dismissed all claims for violations of the Illinois Constitution (Counts II through VI). Only Plaintiffs' four-part § 1983 claim remains.[2] Each alleged constitutional violation is addressed separately below.

---

[2] Plaintiffs did not respond to Defendants' argument that Messmore is the only proper Defendant. As discussed below, however, Count I is dismissed in its entirety for failure to state a claim. It is therefore unnecessary to resolve the issue regarding proper Defendants.

*Equal Protection*

The Fourteenth Amendment to the Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. If – as here – the statute does not implicate a fundamental right (such as the right to vote) or create a suspect classification (such as one based on race), it will be upheld so long as it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). States have "wide latitude" to regulate their economies, and "rational distinctions may be made with substantially less than mathematical exactitude." *Id.* In the economic context, "it is only the invidious discrimination, the wholly arbitrary act," that cannot stand under the equal-protection clause. *Id.* at 303-04.

Under the rational-basis standard, it is not a defendant's burden to justify a statutory classification. *See Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 490 (7th Cir. 1988). Rather, the burden is on the plaintiffs "to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (citation and internal quotation marks omitted); *see also Gusewelle v. City of Wood River*, 374 F.3d 569, 578 (7th Cir. 2004) (*Gusewelle*) ("[T]he burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'") (quoting *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001)). At the pleading stage, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications."

*Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (*Wroblewski*). Moreover, constitutional challenges to legislative acts are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (*Beach Commc'ns*); *accord Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995) (holding that district court erred by holding trial regarding disputed facts as to the rationality of a municipal ordinance because "[o]utside the realm of 'heightened scrutiny' there is . . . never a role for evidentiary proceedings.").

In this case, Plaintiffs merely allege, in conclusory fashion, that "[t]here is no important governmental interest justifying the targeting of those physicians like Plaintiffs practicing in the enumerated areas of specialization, nor is there an important governmental interest to be protected by the arbitrary classification of who is and is not covered by the Statute." (Compl. ¶ 33.) They also allege that "[t]he State has not articulated, and there does not exist, a rational basis for its differential treatment of Plaintiffs and other physicians practicing the enumerated specialties from all other in-facility providers." (Compl. ¶ 34.) In so alleging, Plaintiffs misconstrue the applicable standard. First, the classification does not have to serve an "important" governmental interest; it need only serve a "legitimate" one. Second, it is not the State's burden to articulate a rational basis; it is Plaintiffs' burden to allege facts to support the absence of a rational basis. In light of the appropriate standard, Plaintiffs fail to satisfy *Twombly*'s requirement that they plead sufficient facts – as opposed to conclusions and abstract

8

recitations of the elements of a cause of action – that plausibly suggest an irrational classification in the Act.

Moreover, Defendants do set forth a rational basis for the Act in their Motion to Dismiss. The Act was intended to address a practice known as "balance billing" by out-of-network providers. The problem to be remedied is this: insured patients who chose a physician within their network at a hospital within their network were receiving bills from providers of ancillary medical services who were not in their insurance network, even though those providers of ancillary services were not specifically selected by the patients.

Reading the statute in its entirety reasonably supports Defendants' assertion. The statute defines such "facility-based providers" as "a physician or other provider who provide[s] radiology, anesthesiology, pathology, neonatology, or emergency department services to insureds, beneficiaries, or enrollees in a participating hospital or participating ambulatory surgical treatment center." 215 ILCS 5/356z.3a(a)). The statute does not apply to services provided outside a participating network hospital or ambulatory surgery center. *Id.* § 356z.3a(b). If a patient specifically rejects assignment of his insurance benefits to the facility-based providers or "willfully chooses to access a nonparticipating facility-based physician or provider for health care services," the Act's prohibitions do not apply. *Id.* § 356a.3a(c), (f). Instead, the Act is only intended to cover those patients who have, as Defendants say, "done everything right" in seeking covered healthcare services only to be surprised by bills for ancillary services from non-participating providers.

Plaintiffs claim that they are arbitrarily singled out from other providers, including internal-medicine physicians, general practitioners, cardiologists, pediatricians, general surgeons, and surgical specialists. Plaintiffs do not allege that these categories of providers are otherwise similarly situated to Plaintiffs or allege facts showing that the classification is without any rational basis. They merely allege an unsupported conclusion that the classification is arbitrary, and they do not negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *See Gusewelle*, 374 F.3d at 578 (citation and internal quotation marks omitted). Indeed, it requires no specialized knowledge of the medical field to see a fundamental difference in how these doctors might be classified differently for insurance purposes. A person with health insurance is aware that not all doctors are within their covered network, and she understands that she should select her general practitioner from a list of those within her network. If she requires a surgical procedure, an insured patient can understand the need to locate a facility within her network and to have the surgery performed by a general surgeon or surgical specialist within her network in order to obtain the maximum benefit through her insurance plan. But she would not select the radiologist who takes a necessary X-ray or the anesthesiologist who puts her under before her chosen surgeon operates. These services are ancillary to the one she has specifically chosen, and there is

a rational basis for the legislature to single out those ancillary-service providers for purposes of a law designed to limit patients' exposure to uncovered medical expenses.[3]

In their brief in opposition to Defendants' Motion, Plaintiffs provide a purported example in support of their theory of the Act's arbitrariness. They argue that an out-of-network consulting neurosurgeon who provides services in the same facility and under the same circumstances as an out of-network pathologist would not be affected by the Act. (Pl. Resp. to Mot. to Dismiss 10-11.) There are several problems with this example, not the least of which is Plaintiffs' failure to allege it in their Complaint. As explained by Defendants, classification is based on whether these providers are selected by patients or whether they are providing ancillary services and are not likely to be individually selected by patients. As compared to a general physician (who is obviously selected by a patient) or an anesthesiologist (who almost certainly would not be selected by a patient), a neurosurgeon is not so easily classified. To the extent a neurosurgeon's services are ancillary such that they could logically be classified as a "nonparticipating facility-based provider," the Act's classification is merely underinclusive, not arbitrary. As explained by the Supreme Court, "[R]eform may take place one step at a time, addressing itself to

---

[3] Notably, this rationale is also explained in a letter by the Director of the Illinois Department of Insurance, which Plaintiffs attached to their motion for a preliminary injunction. The letter states:

> Increasingly, Illinois consumers are experiencing unexpected and significant out-of-pocket expenses when using the services of ancillary providers. Repeatedly, the consumer will seek and receive an insurer's precertification for care, only to discover that the "on-call" radiologist, anesthesiologist, pathologist or other similar specialty provider, is not a contracted health care provider.

(Ex. D. to Mot. for Prelim. Inj.)

11

the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489 (1955). The test is not whether the legislature's classifications are perfect methods for remedying a perceived problem, it is whether the classification is conceivably rational. *See Lamers Dairy Inc. v. U.S. Dep't of Agric.*, 379 F.3d 466, 476 (7th Cir. 2004).

"[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319 (1993) (quoting *Beach Commc'ns*, 508 U.S. at 313). It is not enough for Plaintiffs to simply label a statutory classification as arbitrary and without a rational basis; they must allege *facts* that plausibly suggest that the classification is arbitrary and without a rational basis. They have not done so. Plaintiffs' equal-protection claim is dismissed.

*Due Process*

A state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs' due-process claim is based on an alleged loss of liberty. They allege as follows:

> Because Plaintiffs are facility-based providers and their contracts with the facilities require that they provide medical services to the facilities' patients, and because the Statute does not allow for the full compensation of Plaintiffs for such services, the Statute, as enacted and implemented, violates Plaintiffs' basic rights to earn a living and to pursue the livelihood of their choosing.

(Compl. ¶ 41.)

Plaintiffs do not specify whether the States' alleged due-process violations are substantive or procedural; but in their response to Defendants' Motion to Dismiss, they characterize their claim as one for violation of their right to "occupational liberty." (Pl.

Resp. 11.) Such claims are confined to procedural due process because occupational liberty is not protected by substantive due process. *Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994). Moreover, a physician has no property interest in a particular job. *See Tunca v. Lutheran Gen. Hosp.*, 844 F.2d 411, 414 (7th Cir. 1988) ("There is clearly no constitutionally protected right to be able to practice medicine at the hospital of one's choice.").

Thus, to state a claim that the Act abridges their right to pursue an occupation of their choosing, Plaintiffs must allege that they are now excluded from that field. *See Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) ("An occupational-liberty claim requires 'that the circumstances made it virtually impossible for [the plaintiff] to find a new position in his chosen profession.'") (quoting *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995)). They have not done so. Although Plaintiffs allege that the Act violates their "basic rights to earn a living and to pursue the livelihood of their choosing" (Compl. ¶ 41), they do not allege any facts to show that they are effectively barred from practicing their chosen specialties. At best, Plaintiffs claim that their current arrangement at specific hospitals is potentially less lucrative or more burdensome than it was before the Act was enacted. That is not enough to support a claim that the State has deprived them of due process.

To the extent Plaintiffs would argue that their right to substantive due process was violated, the claim fails for the same reasons as does their equal-protection claim. The process for determining whether a law is "arbitrary" in violation of the due-process clause is analogous to determining whether a law lacks a "rational basis" in violation of

the equal protection clause. *Wroblewski*, 965 F.2d at 458. As discussed above, Plaintiffs' conclusory allegations that they are arbitrarily singled out are not sufficient to state a claim. Plaintiffs' due-process claim is dismissed.

*Contract Clause*

The Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligations of Contracts," U.S. Const. Art. I, § 10; but "the Supreme Court has repeatedly affirmed that the clause does not abrogate a state's inherent power to protect the interests of its citizens," *Chi. Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 735 (7th Cir. 1987) (*Board of Realtors*) (compiling cases); *see also Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 894 (7th Cir. 1998) (*Chrysler*) ("It has been a long time, however, since the contracts clause was interpreted literally."). The Supreme Court has outlined a three-part test for determining whether a law violates the Contracts Clause: first, the court must determine whether the law operates as a substantial impairment of existing contractual relationships; second, it must determine whether a "significant and legitimate purpose" justifies the law; and third, the effect of the law on contracts must be reasonable and appropriate in light of the public purpose. *Board of Realtors*, 819 F.2d at 736 (citing *Energy Reserves Grp. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).

Defendants argue that the Act represents incremental legislation in the heavily regulated insurance industry such that any impairment to Plaintiffs' contracts through the Act was reasonably foreseeable to Plaintiffs at the time they entered into the contracts they now claim are substantially impaired. Specifically, Defendants assert that

previously existing administrative regulations held patients harmless from balance-billing problems. A Department of Insurance rule provided that when a beneficiary has made a good-faith effort to utilize network providers for a covered service, "the beneficiary will be provided the covered service at no greater cost to the beneficiary than if the service had been provided by a preferred provider." 50 Ill. Admin. Code 2051.310(a)(6)(H). Defendants assert that the Act merely took the matter one step further by providing for mandatory arbitration in the event that a dispute arose between a service provider and an insurer. Thus, any impairment cannot be considered "substantial," and the claim fails at the threshold. *Cf. Chrysler*, 148 F.3d at 895 (holding that there was no violation of the contracts clause because "[t]he regulation of which [plaintiff] complains was in the direct path of the plausible (though of course not inevitable) evolution of [an existing regulatory program]" in place before plaintiff entered into the contract at issue).

Moreover, there is an additional problem with Plaintiffs' contract-clause claim that is even more basic. In order to determine if the Act "substantially" impaired any of Plaintiffs' contractual rights or obligations, it is necessary to determine what those rights and obligations are; and Plaintiffs do not allege any specific contractual rights or obligations in their Complaint. Instead, they make conclusory allegations that the Act "profoundly impacts the existing contracts entered into between medical care facilities and medical care providers, as well as contracts entered into between medical care providers and insurers, or other payors." (Compl. ¶ 45.) They also allege that the Act "impairs Plaintiffs' existing contracts with facilities, the ability of Plaintiffs to freely contract with the facilities, and their right to make choices about which insurers with

whom to contract, all in violation of the U.S. Constitution." (Compl. ¶ 47.) Thus, it appears Plaintiffs claim the Act impairs (1) their existing contracts with the facilities at which they work and (2) prospective contracts with insurers.

To the extent Plaintiffs' contracts-clause claim is based on allegations that the Act prevents them from contracting with insurers in the future or that it creates *de facto* contractual relationships between Plaintiffs and insurers, their Complaint offers no support for this theory. Indeed, the Supreme Court no longer recognizes a substantive freedom-of-contract right. *See Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 957 (1992) (observing that *West Coast Hotel v. Parrish*, 300 U.S. 379 (1937), overruled a line of cases recognizing freedom of contract as a liberty interest). The threshold issue in a contracts-clause claim is to identify "the precise contractual right that has been impaired and the nature of the statutory impairment." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) (*Keystone*). Plaintiffs have not alleged – and cannot allege – the impairment of any contractual right that does not yet exist. *See Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982) (*Texaco*) ("[A] statute cannot be said to impair a contract that did not exist at the time of its enactment.").

That leaves Plaintiffs' claim that the Act substantially impairs their existing contracts. The allegations regarding those contracts are as follows:

> Pursuant to their contracts with the facilities where they are based, Plaintiffs are required to provide services to patients. Plaintiffs accept this obligation as the contract was negotiated at arms' length, and because they may charge the full value of their services and collect from the patients the difference between the reimbursed amounts from insurers and health plans and their actual fees. They thus have chosen to practice their profession without the strictures imposed on them by belonging to a particular network of insurers or health plans.

16

(Compl. ¶ 39.)

Plaintiffs simply do not allege a "precise contractual right that has been impaired and the nature of the statutory impairment." *See Keystone*, 480 U.S. at 504. Although they complain that their financial relationship with patients has been affected by the Act, Plaintiffs do not allege the existence of any contracts between Plaintiffs and patients. The only specific contract alleged is between Plaintiffs and the healthcare facilities where they work, and the only specific term alleged is Plaintiffs' obligation to provide services to patients. There is no allegation that this obligation has been impaired, and Plaintiffs allege no specific contractual right conferred on Plaintiffs in return. Rather, Plaintiffs allege only that they accepted that obligation because they could charge full value for their services and collect from patients amounts beyond what insurers would pay. They do not actually allege that their ability to charge full value to their patients was a contractual right arising from their contract with the hospitals. And even if the existence of such a contractual right reasonably could be inferred from Plaintiffs' allegations, it would be, at most, Plaintiffs' right to charge patients without any limit imposed *by the hospitals*. There is no allegation that the Act alters any right flowing from the hospitals to Plaintiffs or vice versa. And if Plaintiffs are attempting to claim that the Act alters Plaintiffs' right to collect unreimbursed amounts from their patients in the future, the claim fails for the reasons set out above. *See Texaco*, 454 U.S. at 531. Plaintiffs' contract-clause claim is dismissed.

17

*Void for Vagueness*

"The void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional 'if its prohibitions are not clearly defined.'" *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (*Grayned*)). Where, as here, there is no constitutionally protected conduct involved (e.g., free speech), a facial vagueness challenge to economic regulations should be upheld "only if the enactment is unconstitutionally vague in all its applications." *Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982) (*Hoffman Estates*). Laws must provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited and must contain explicit standards to avoid arbitrary and discriminatory enforcement. *Grayned*, 408 U.S. at 108-09.

Plaintiffs allege that the Act is unconstitutionally vague in the following respects: (1) it does not explain why the statutory definition of "facility-based providers" does not include all in-facility providers; (2) it requires Plaintiffs to ensure that patients are not billed amounts that exceed the in-network allowance when Plaintiffs have no practical way to determine whether patients are within the network or what, if any, allowance applies; (3) it forces Plaintiffs to submit to binding arbitration if they are unable to reach an agreement with insurers but fails to set forth what standards and procedures the arbitrator must apply; and (4) it fails to provide guidance on how negotiation and arbitration provisions will be applied. (Compl. ¶¶ 53-56.) None of these allegations provides a sufficient basis for a claim that the Act is void for vagueness.

With regard to the statutory definition of "facility-based providers," there is no constitutional requirement that a person affected by a law understand *why* he is affected by that law; he need only know what is prohibited. Here, there is nothing vague about the classification of physicians covered by the Act. Plaintiffs are pathologists, and pathologists are specifically included in the definition of "facility-based providers." Nor is there anything vague about what is prohibited: direct balance billing of insured patients.

With regard to Plaintiffs' allegation that they have no practical way to determine whether patients are in network or what allowance applies, that claim is undermined by the plain text of the Act, itself. The Act only applies to those insured patients who agree in writing to assign their insurance benefits over to the nonparticipating facility-based providers. *See* 215 ILCS 5/356z.3a. If such an assignment is made, the insurer "shall provide the nonparticipating provider with a written explanation of benefits that specifies the proposed reimbursement and the applicable deductible, copayment or coinsurance amounts owed by the insured." *Id.*

With regard to arbitration standards or guidance regarding negotiation and arbitration, Plaintiffs do not allege any vagueness regarding what is prohibited and how the Act will be enforced. As Plaintiffs acknowledge in their Complaint, the void-for-vagueness doctrine is a principle of due process. Compl. ¶ 51; *see also United States v. Williams*, 553 U.S. 285, 304 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). Generally, it is applied in the context of criminal laws, where the criminal penalties present an obvious

deprivation of liberty or property. *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41 (1999); *Kolender v. Lawson*, 461 U.S. 352 (1983); *Hoffman Estates*, 461 U.S. 352 (1982); *Grayned*, 408 U.S. 104.

The Act in question is part of the Illinois Insurance Code. It is not a criminal statute, and it does not provide any penalty for failure to comply with its terms. Thus, Plaintiffs are not alleging that the Act deprives them of liberty or property through criminal enforcement. Instead, Plaintiffs essentially complain that categories of charges they were allowed to bill to patients before the Act would now be settled by insurers or health plans or, in the event of a dispute with physicians, an arbitrator. Thus, it seems that Plaintiffs are essentially recasting a procedural due-process claim. As explained above, Plaintiffs have not sufficiently alleged a deprivation of occupational liberty or other protected interest. The fact that the Act does not provide specific fee schedules or arbitration procedures does not raise due-process concerns and does not render the Act vague with regard to the conduct prohibited or the standards of its enforcement. Plaintiffs' claim that the Act is void for vagueness is dismissed.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is granted in its entirety.

Date: September 23, 2011

JOHN W. DARRAH
United States District Court Judge